IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

REGINA KARGE,

               Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

            Defendant.

HONORABLE JEROME B. SIMANDLE

Civil Action
No. 17-4999 (JBS)

**OPINION**

APPEARANCES:

Alan H. Polonsky, Esq.
POLONSKY AND POLONSKY
512 S. White Horse Pike
Audubon, NJ 08106
    Attorney for Plaintiff

Andrew Charles Lynch, Special Assistant U.S. Attorney
SOCIAL SECURITY ADMINISTRATION
OFFICE OF THE GENERAL COUNSEL
300 Spring Garden Street, 6th Floor
Philadelphia, PA 19123
    Attorney for Defendant

**SIMANDLE**, District Judge:

I.   **INTRODUCTION**

    This matter comes before the Court pursuant to 42 U.S.C §

405(g) for review of the final decision of the Commissioner of

the Social Security Administration ("SSA") denying the

application of Plaintiff Regina Karge ("Plaintiff") for Social

Security Disability Benefits and Supplemental Security Income

under Title II and XVI of the Social Security Act, 42 U.S.C. §

401 et seq. Plaintiff, who suffers from multiple sclerosis,

degenerative disc disease, depression, and migraines, was denied benefits for the period of disability from June 24, 2013, the alleged onset date of disability, to January 25, 2016, the date on which the Administrative Law Judge ("ALJ") issued a written decision.

In the pending appeal, Plaintiff contends that the ALJ's decision must be reversed and remanded on two grounds. First, Plaintiff argues that the ALJ's finding as to her Residual Functional Capacity ("RFC") was not supported by substantial evidence. Second, Plaintiff argues that the ALJ abused her discretion by preventing Plaintiff's counsel from fully cross-examining the vocational expert and, therefore, the ALJ's step four and step five determinations were not supported by substantial evidence. For the reasons stated below, the Court will vacate the decision of the ALJ and remand for further proceedings consistent with this Opinion.

## II. BACKGROUND

### A. Procedural History

On September 12, 2013, Plaintiff filed applications for Social Security Disability Benefits and Supplemental Security Income alleging she was disabled as of June 24, 2013. (R. 297-303.) Plaintiff's claim was denied by the SSA on February 21, 2014. (R. 188-93.) Her claim was again denied upon reconsideration on April 25, 2014. (R. 200-05.) A hearing was

held before ALJ Karen Shelton on December 16, 2015. (R. 32-104.)
The ALJ issued an opinion on January 25, 2016, denying Plaintiff
benefits. (R. 12-27.) On May 7, 2017, the Appeals Counsel denied
Plaintiff's request for review. (R. 1-5.) This appeal timely
follows.

### B.    Personal and Medical History

Plaintiff was 33 years old on the alleged disability onset
date and 35 years old at the time of her hearing before the ALJ.[1]
(R. at 134.) She graduated from high school and can speak
English. (R. at 144.) From 2001 through 2006 and from 2007 until
June 24, 2013, she worked as a child care provider and teacher
aide. (R. at 24-25, 59, 84-86, 155-56, 306-08.) Between 2006 and
2007, Plaintiff stayed home full-time to take care of her
children. (R. at 49.)

On June 24, 2013, Plaintiff was diagnosed by her treating
neurologist, Dr. Sayed Arif Ali Jaffrey, M.D., with multiple
sclerosis ("MS"), chronic migraines, and low back pain. (R. at
397-99, 411.) Plaintiff met with Dr. Jaffrey again on July 24,
2013 and reported feeling "all right" and that she had
experienced no side effects from Rebiff. (R. at 394.) On July
29, 2013, Dr. Jaffrey wrote that Plaintiff "is able to work with
the following restrictions: no frequent bending, no prolonged

---

[1] Accordingly, Plaintiff was a "younger person" under the
relevant SSA regulations during the alleged period of
disability. 20 C.F.R. §§ 404.1563(c), 416.963(c).

standing, no lifting over 20 lbs, and no prolonged walking." (R. at 412.) The following week, on August 7, 2013, Dr. Jaffrey wrote that Plaintiff "is able to work with the following restrictions: [a]void lifting over 20 lbs, avoid frequent bending, avoid prolonged standing for more than one hour at a time, avoid prolonged walking for more than one hour at a time, [c]hange positions intermittently as needed." (R. at 413; see also R. 391-93.) On August 4, 2014, Dr. Jaffrey opined, among other things, that Plaintiff could not work full time, was only able to work four hours per day, that she had limitations in climbing, stooping, bending, and lifting, and that she would be unable to work for more than 90 days but less than six months from June 2014 to December 2014. (R. at 473-75.) Plaintiff continued to treat with Dr. Jaffrey for her MS, low back pain, chronic migraines, and depression until at least November 2014. (R. at 382-90, 425-77.)

In October and November 2013, Plaintiff met with her primary care provider, Dr. Joseph Gallagher, D.O., who prescribed her with Cymbalta for depression. (R. at 380-81, 480-81.) Plaintiff continued to treat with Dr. Gallagher for depression, as well as her MS, low back pain, and chronic migraines. (R. at 486-87.) On January 16, 2015, Dr. Gallagher opined that Plaintiff could not work full-time, was only able to work four hours per day, and that she had limitations in

standing, walking, climbing, stooping, bending, and lifting. (R. at 422-24.)

On September 9, 2015, Plaintiff was examined by Dr. Francky Merlin, M.D. (R. at 505-15.) Dr. Merlin confirmed Plaintiff's MS and migraines diagnoses (R. at 506) and opined that Plaintiff could only lift and carry up to 10 pounds occasionally, sit for four hours and walk for 30 minutes without interruption, and sit for four hours, stand for two hours, and walk for one hour during an eight-hour work day. (R. at 509-10.) Dr. Merlin further opined that Plaintiff could only use her hands for between 1/3 and 2/3 of the work day and her feet for up to 1/3 of the work day. (R. at 511-12.)

### C. State Agency Consultants

Dr. Melvin Golish, M.D., a State agency medical consultant, reviewed Plaintiff's medical records and assessed her physical residual functional capacity. (R. at 134-57.) Dr. Golish opined that Plaintiff could occasionally lift and carry 10 pounds, stand and walk for four hours and sit for about six hours in an eight-hour work day, and occasionally climb ramps or stairs, balance, stoop, kneel, crouch and crawl, but could never climb ladders, ropes or scaffolds and should avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, and hazards. (R. at 141-43.)

Dr. Caroline Shuback, M.D., another State agency medical
consultant, also reviewed Plaintiff's medical records and
assessed her physical residual functional capacity. (R. at 160-
83.) Like Dr. Golish, Dr. Shuback opined that Plaintiff could
occasionally lift and carry 10 pounds, stand and walk for four
hours and sit for about six hours in an eight-hour work day, and
occasionally climb ramps or stairs, balance, stoop, kneel,
crouch and crawl, but could never climb ladders, ropes or
scaffolds and should avoid concentrated exposure to extreme
cold, extreme heat, wetness, humidity, and hazards. (R. at 179-
81.)

### D.   Plaintiff's Activities

During a hearing held by the ALJ on December 17, 2015,
Plaintiff testified that she was a single mother of three
children who, at the time of the hearing, were 9, 10, and 13
years old. (R. at 43.) Plaintiff testified that she regularly
drove her children to and from school, as well as to their
sporting events. (R. at 69, 73.) She also sat with them to
assist with homework, oversaw their breakfast each morning, and
prepared a "family dinner" each night. (R. at 73-75.) Plaintiff
also testified that shortly after she was diagnosed with MS in
June 2013, she stopped working full-time as a child care
provider and teacher aid, but continued to work part-time until
in or around September 2014 when her employer, Archway Programs,

converted her to a "substitute" and then "never called [her] back to come in for a subbing position at all." (R. at 55; see also R. at 414 ("[Plaintiff] was working 25 hours per week, but as of January 2, 2014 she has cut her work hours down to 14 hours per week.")).

### E.   Vocational Expert Testimony

During Plaintiff's hearing in front of the ALJ, the ALJ also heard testimony from Mitchel Schmidt, a vocational expert. (R. at 84-103.) Based on Plaintiff's testimony, the vocational expert classified her past work as a Child Monitor, DOT 301.677-010, performed as described by DOT at a medium exertional level, and as a Teacher Aid II, DOT 249.367-074, performed at a sedentary level rather than at a light level, as described by DOT. (R. at 85-87.) The vocational expert opined that a person with Plaintiff's RFC could not work as a Child Monitor, either as performed by Plaintiff or as defined by the DOT, or the work of a Teacher Aid II, as defined by the DOT at the light level, but that the same individual could perform the work of a Teacher Aid II, as actually performed by Plaintiff at the sedentary level. (R. 87.) The vocational expert further opined that the same hypothetical individual could also perform the work of an addressor, of which there are "approximately 90,000" jobs in the national economy, nut sorter, of which there are "about 35,000 jobs" in the national economy, and cuff sorter, of which there

are "approximately 18,000 jobs" in the national economy. (R. at 88.) Counsel for Plaintiff then attempted to ask the vocational expert several questions on cross-examination (R. at 91-109), which Plaintiff now argues were improperly limited by the ALJ. (Pl.'s Br. at 26-38.)

###### F.   ALJ Decision

In a written decision dated January 25, 2016, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act at any time between the alleged onset date of disability and the date of the ALJ's written decision because, consistent with Plaintiff's age, education, work experience, and RFC, she was capable of working in her past job as a teacher aide as she had performed it at a sedentary level, or, in the alternative, as an addressor, nut sorter, or cuff folder. (R. at 24-25.)

At the first stage of the five-step sequential evaluation process, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since June 24, 2013, the date she was diagnosed with MS. (R. at 17.) The ALJ "defer[ed] a finding of whether or not the claimant's work after onset constitute substantial gainful activity on consideration of additional factors set forth at 20 CFR 404.1574," and proceeded to the next step of the sequential evaluation process. (Id.)

Next, at step two, the ALJ determined that Plaintiff had

the following "severe" impairments: multiple sclerosis,

degenerative disc disease, and migraines. (Id.) The ALJ found

Plaintiff's alleged depression to be "non-severe" because it

"does not cause more than minimal limitation in [Plaintiff's]

ability to perform basic mental work activities." (R. at 18.)

With respect to Plaintiff's depression, the ALJ considered "the

four broad functional areas set out in the disability

regulations for evaluating mental disorders and in section

12.00C of the Listing of Impairments . . . known as the

'paragraph B' criteria," examined Plaintiff's medical records

and other relevant evidence, in detail, and described the

reasons she found Plaintiff's depression to be "non-severe." (R.

at 18-19.)

At step three, the ALJ concluded that none of Plaintiff's

impairments or combination of impairments met or medically

equaled the severity of one of the listed impairments in 20

C.F.R. Part 404, Subpart P, Appendix 1, including those set

forth in Listings 1.04, 11.03, and 11.09. (R. at 19.)

Between step three and step four, the ALJ determined that

Plaintiff possessed the RFC to perform "sedentary work," as

defined in C.F.R. §§ 404.1567(a) and 416.967(a), except that:

> [S]he can lift and carry and push/pull no more than 10
> pounds, can stand and walk no more than 4 out of 8 hours,
> but would need to sit for 5 minutes after 1/2 hour of
> standing/walking or would be posturally immaterial and

> sit for 6 out of 8 hours, but would need to stand for 5
> minutes after 1/2 hour of sitting or be posturally
> immaterial, occasional ramps and stairs, no ladders,
> ropes, or scaffolds, occasional balancing, stooping,
> kneeling, crouching, and crawling, occasional exposure
> to cold, heat, wetness, humidity, and no unprotected
> heights or hazardous machinery.

(R. at 19-20.)

In determining Plaintiff's RFC, the ALJ considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." (R. at 20.) Although the ALJ found that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms," she concluded that Plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (R. at 22.) In doing so, the ALJ analyzed the medical evidence in the record with respect to each of Plaintiff's impairments. (R. at 20-23.)

The ALJ assigned "little weight" to Dr. Joseph Gallagher's Examination Report, which found that Plaintiff is unable to work full-time and could only work for four hours, because "Dr. Gallagher's conclusion that the claimant was unable to work a fully day is not supported by any explanation and is not consistent with the medical record as a whole, which indicates that the claimant could do at least sedentary work." (R. at 24.) Moreover, the ALJ assigned "little weight" to the opinions of

Dr. Merlin, specifically those "related to the claimant's exertional limitations and her ability to work a full eight hours, as these opinions are not supported by his examination, the longitudinal record as a whole and the claimant's activities of daily living as described above." (Id.) Finally, the ALJ assigned "significant weight" to the State agency medical consultants' opinions "to the extent that they are consistent with the longitudinal medical records as described," but gave "little weight" to the State agency consultants' opinions "with respect to the claimant's exertional and environmental limitations." (R. at 23.)

Notably, and as discussed in more detail in Section IV.B.1, infra, the ALJ mentioned the opinions of Dr. Jaffrey, including that Plaintiff is unable to work full-time and could only work for four hours, but did not specify or explain the weight she assigned to those opinions. (R. at 24.)

Based on Plaintiff's RFC and the vocational expert's testimony from the December 17, 2015 hearing, the ALJ found, at step four, that Plaintiff was able to perform her past relevant work as a Teacher Aide II, as she generally performed it at sedentary level, but not as a Child Monitor. (R. at 24-25.) In the alternative, the ALJ found at step five that there exists a significant number of jobs in the national and regional economy that Plaintiff can perform, including those of addressor (90,000

jobs in the national economy), nut sorter (35,000 jobs in the national economy), and cuff sorter (18,000 jobs in the national economy). (R. at 25-26.) Accordingly, the ALJ found that Plaintiff was not under a disability, as defined in the Social Security Act, from June 24, 2013 through the date of the decision. (R. at 27)

## III. STANDARD OF REVIEW

This Court reviews the Commissioner's decision pursuant to 42 U.S.C. § 405(g). The Court's review is deferential to the Commissioner's decision, and the Court must uphold the Commissioner's factual findings where they are supported by "substantial evidence." 42 U.S.C. § 405(g); see also Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Cunningham v. Comm'r of Soc. Sec., 507 F. App'x 111, 114 (3d Cir. 2012). Substantial evidence is defined as "more than a mere scintilla," meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 400 (1971); see also Hagans v. Comm'r of Soc. Sec., 694 F.3d 287, 292 (3d Cir. 2012) (using the same language as Richardson). Therefore, if the ALJ's findings of fact are supported by substantial evidence, those findings bind the reviewing court, whether or not it would have made the same determination. Fargnoli, 247 F.3d at 38. The Court may not weigh the evidence or substitute its own conclusions for those of the

ALJ. Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 359 (3d Cir. 2011). Remand is not required where it would not affect the outcome of the case. Rutherford v. Barnhart, 399 F.3d 546, 553 (3d Cir. 2005).

## IV.  DISCUSSION

### A.  Legal Standard for Determination of Disability

In order to establish a disability for the purpose of disability insurance benefits, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period." Plummer v. Apfel, 186 F.3d 422, 426 (3d Cir. 1999); 42 U.S.C. § 423(d)(1). A claimant lacks the ability to engage in any substantial activity "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Plummer, 186 F.3d at 427–428; 42 U.S.C. § 423(d)(2)(A).

The Commissioner reviews claims of disability in accordance with the sequential five-step process set forth in 20 C.F.R. § 404.1520. In step one, the Commissioner determines whether the claimant currently engages in "substantial gainful activity." 20 C.F.R. § 1520(b). Present engagement in substantial activity

precludes an award of disability benefits. See <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140 (1987). In step two, the claimant must demonstrate that the claimant suffers from a "severe impairment." 20 C.F.R. § 1520(c). Impairments lacking sufficient severity render the claimant ineligible for disability benefits. See <u>Plummer</u>, 186 F.3d at 428. Step three requires the Commissioner to compare medical evidence of the claimant's impairment(s) to the list of impairments presumptively severe enough to preclude any gainful activity. 20 C.F.R. § 1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. <u>Plummer</u>, 186 F.3d at 428. Between steps three and four, the ALJ determines the claimant's RFC. 20 C.F.R. § 404.1545. Step four requires the ALJ to consider whether, based on his or her RFC, the claimant retains the ability to perform past relevant work. 20 C.F.R. § 1520(e). If the claimant's impairments render the claimant unable to return to the claimant's prior occupation, at step five the ALJ will consider whether the claimant possesses the capability to perform other work existing in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work experience. 20 C.F.R. §§ 1520(g), 404.1560(c).

**B.  Analysis**

Plaintiff argues that: (1) the ALJ's finding as to her RFC was not supported by substantial evidence and; (2) the ALJ abused her discretion by preventing Plaintiff's counsel from fully cross-examining the vocational expert and, therefore, the ALJ's step four and step five determinations were not supported by substantial evidence. The Court addresses each argument in turn.

> 1.  Substantial evidence does not support the ALJ's RFC determination

Plaintiff first avers that the ALJ erred in formulating her RFC between steps three and four by failing to either identify or explain the weight she assigned to the opinions of Plaintiff's treating neurologist, Dr. Jaffrey, including that Plaintiff could only work four hours in an eight-hour workday. (Pl.'s Br. at 17-19.) Plaintiff also argues that the ALJ did not adequately explain her reasons for assigning "little weight" to the opinions of Plaintiff's primary care provider, Dr. Gallagher, including that Plaintiff could only work part-time, for four hours in an eight-hour day. (Id. at 19-20.) For the reasons explained below, the Court finds that the ALJ failed to fully identify, weigh, and consider all of the medical evidence of record, including the medical opinions of Plaintiff's treating physicians, Dr. Jaffrey and Dr. Gallagher. As such, the Commissioner's finding is not supported by substantial evidence,

and the Court will remand for resolution. See Fargnoli, 247 F.3d at 42 ("Where there is conflicting probative evidence in the record, we recognize a particularly acute need for an explanation of the reasoning behind the ALJ's conclusions, and will vacate or remand a case where such an explanation is not provided.").

The Court is mindful that "the ALJ — not treating or examining physicians or State agency consultants — must make the ultimate disability and RFC determinations." Chandler, 667 F.3d at 361; see also 20 C.F.R §§ 404.1527(e)(1). Furthermore, while an ALJ must consider the opinions of treating physicians, "[t]he law is clear . . . that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity" where it is not well supported or there is contradictory evidence. Chandler, 667 F.3d at 361 (alteration in original) (quoting Brown v. Astrue, 649 F.3d 193, 197 n.2 (3d Cir. 2011)); see also Coleman v. Comm'r. of Soc. Sec., 494 F. App'x 252, 254 (3d Cir. 2012) ("Where, as here, the opinion of treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason.") (quoting Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000)).

On the other hand, treating physicians' reports "should be accorded great weight, especially 'when their opinions reflect

16

expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" Plummer, 186 F.3d at 429. Moreover, "[s]ince it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." Cotter v. Harris, 642 F.2d 700, 706-07 (3d Cir. 1981) (internal citation omitted).

Here, the ALJ correctly acknowledged that Dr. Jaffrey had offered three relevant medical source statements after Plaintiff's alleged onset date – in July 2013, August 2013, and August 2014. (R. at 24.) As the ALJ explained:

> [Dr. Jaffrey] opined in July 2013 found [sic] that the claimant was able to work with no frequent bending, no prolonged standing, no lifting over 20 pounds, and no prolonged walking. In August 2013, Dr. Jaffrey noted that the claimant was able to work but should avoid lifting over 20 pounds, avoid frequent bending, avoid prolonged standing for more than one hour at a time, avoid prolonged walking for more than one hour at a time, change positions intermittently as needed (Exhibit 2F). Dr. Jaffrey later completed an Examination Report in August 2014 that the claimant could not work full-time but could work 4 hours. He noted unspecified limitations in climbing, stooping, bending, and lifting. Dr. Jaffrey reported that the claimant would be unable to work for more than 90 days but less than 6 months from June to December 2014 (Exhibit 6F).

(Id.) The ALJ did not, however, explicitly identify the weight she assigned to Dr. Jaffrey's opinion. Nor does it appear that the ALJ incorporated the limitations identified by Dr. Jaffrey

into Plaintiff's RFC – namely, that Plaintiff could not work full-time due to documented physical limitations related to her significant medical conditions. Without this information, the Court is left to guess whether and why the ALJ discredited Dr. Jaffrey's opinions.

The ALJ also did not adequately explain her reasoning for assigning "little weight" to Dr. Gallagher's opinion that Plaintiff can only work for four hours per day. Instead, the ALJ simply stated "Dr. Gallagher's conclusion that the claimant was unable to work a full day is not supported by any explanation and is not consistent with the medical record as a whole, which indicates that claimant could do at least sedentary work." (R. at 24.) But the ALJ does not cite any specific evidence that Plaintiff is actually capable of performing full-time, sedentary work, nor does the ALJ point to any direct evidence that contradicts Dr. Gallagher's contemporaneous findings based upon the extended course of treatment and observation.

Thus, the ALJ erred. On remand, the ALJ must, at a minimum, fully re-evaluate the medical opinions and records of Dr. Jaffrey and Dr. Gallagher. If the ALJ determines that those medical opinions should be discounted or rejected, the ALJ must cite "**specific** contradictory medical evidence that supports her decision for doing so." Ruberti v. Comm'r of Soc. Sec., 2017 WL 6492017, at *8 (D.N.J. Dec. 19, 2017) (emphasis in original).

## 2. The ALJ's step four and five determinations

The Court is remanding for the above reasons and will not fully address Plaintiff's second argument that the ALJ abused its discretion by preventing Plaintiff's counsel from fully cross-examining the vocational expert. (Pl.'s Br. at 24-38; see also R. 365-57.) The Court notes, however, that, in considering the above issues on remand, and after properly re-formulating Plaintiff's RFC, the ALJ **may** conduct a new hearing and/or consult with a vocational expert or other specialist to assist in the ALJ's step four and step five determinations. See 20 C.F.R. § 404.1566(e). In the event the ALJ does opt to consult with a vocational expert at such a hearing, the ALJ must provide Plaintiff with an adequate opportunity to cross-examine the vocational expert.

As an overarching principle, "administrative hearings are subject to the requirements of due process," Lippincott v. Comm'r of Soc. Sec., 982 F. Supp. 2d 358, 385 (D.N.J. 2013) (citing Richardson v. Perales, 402 U.S. 389, 401-02 (1971)), and any hearing afforded a Social Security disability claimant must be full and fair, Meyler v. Comm'r of Soc. Sec., 238 F. App'x 884, 889 (3d Cir. 2007) (citing Ventura v. Shalala, 55 F.3d 900, 902 (3d Cir. 1995)). "Consistent with due process, claimants must be given an opportunity to cross-examine the vocational expert," Wallace v. Comm'r of Soc. Sec., 2014 WL 6667362, at *6

19

(D.N.J. Nov. 21, 2014) (internal citation omitted), and "an opportunity for cross-examination is an element of fundamental fairness of the hearing to which a claimant is entitled under section 205(b) of the Social Security Act, 42 U.S.C. § 405(b)," Wallace v. Bowen, 869 F.2d 187, 192 (3d Cir. 1989); see also Haddock v. Apfel, 196 F.3d 1084, 1090 (10th Cir. 1999) ("Claimants have a right to cross-examine vocational experts as a part of procedural due process."); Howe v. Astrue, 2013 WL 593975, at *3 (W.D. Pa. Feb. 14, 2013) ("[A] claimant has the right to cross-examine vocational experts as a part of procedural due process.").

Moreover, according to the Social Security Administration's Hearings, Appeals, and Litigation Law Manuel ("HALLEX"):[2]

> The claimant and the representative have the right to question the [vocational expert] fully on any pertinent matter within the [vocational expert's] area of expertise. However, the ALJ will determine when they may exercise this right and whether questions asked or answers given are appropriate.

---

[2] "HALLEX conveys guiding principles, procedural guidance, and information to hearing level and Appeals Council staff. HALLEX defines procedures for carrying out policy and provides guidance for processing and adjudicating claims at the hearing, Appeals Council, and civil action levels. It also includes policy statements resulting from Appeals Council en banc meetings under the authority of the Appeals Council Chair." HALLEX § I-1-0-1, Purpose, https://www.ssa.gov/OP_Home/hallex/I-01/I-1-0-1.html.

HALLEX I-2-6-74(C).[3] The ALJ will also ensure that, during questioning of the vocational expert:

- If the VE's replies are ambiguous or overly technical, the ALJ will follow up with specific questions in order to obtain a response that is understandable to the average person.

- The ALJ will not permit the VE to respond to questions on medical matters or to draw conclusions not within the VE's area of expertise. For example, the VE may not provide testimony regarding the claimant's residual functional capacity or the resolution of ultimate issues of fact or law.

- The ALJ will not ask or allow the VE to conduct any type of vocational examination of the claimant during the hearing.

- If the VE bases certain testimony on an assumption, the ALJ will ask the VE to clearly describe the assumption on the record.

Id.

Here, Plaintiff raises several potential issues with the way the ALJ conducted the December 17, 2015 hearing and the manner in which the ALJ limited the cross-examination of the vocational expert. (Pl.'s Br. at 26-38.) On remand, the Court invites the ALJ to fully consider and/or address Plaintiff's important process-related concerns. At this time, however, the Court will not reach the merits of Plaintiff's second argument.

---

[3] Available at HALLEX § I-2-6-74, Testimony of a Vocational Expert, https://www.ssa.gov/OP_Home/hallex/I-02/I-2-6-74.html.

**V. CONCLUSION**

For the foregoing reasons, the Court finds that the case should be remanded to ensure that the ALJ properly weighs the medical opinions of Plaintiff's treating physicians, as appropriate. An accompanying Order will be entered.

**November 21, 2018**          **s/ Jerome B. Simandle**
Date                          JEROME B. SIMANDLE
                              U.S. District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

REGINA KARGE,

               Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

             Defendant.

HONORABLE JEROME B. SIMANDLE

Civil Action
No. 17-4999 (JBS)

**OPINION**

     This matter coming before the Court upon review of the
final decision of the Defendant, Commissioner of the Social
Security Administration, denying the application of Regina Karge
for Social Security benefits; and the Court finding that
substantial evidence does not support the Commissioner's
decision and that it should be remanded for the reasons set
forth in the Opinion of today's date; and for good cause shown,

     IT IS this   **21st**   day of   **November**  , **2018,** hereby

     ORDERED that the Commissioner's decision shall be, and
hereby is, **REMANDED** for further consideration.

                    **s/ Jerome B. Simandle**
                    JEROME B. SIMANDLE
                    U.S. District Judge